SONNEBORN SONS *v.* UNITED STATES (No. 239).[1]

1. PROVISO IN PARAGRAPH 626, TARIFF ACT OF 1897—PARAFFIN.

.In the interpretation of a statute, whenever possible, effect will be given to all parts of the act, even though to do this enlarges or limits the stricter meaning of some provision in the act, and though paraffin is free of duty, according to one paragraph of the tariff act of 1897, paraffin oil produced from petroleum must be taken to have been included by intent in paragraph 626 of that act, the proviso to which makes crude petroleum or its products subject to a countervailing duty and to be dutiable under said paragraph 626.

2. "COUNTRY," MEANING IN A REVENUE LAW.

The word "country," as employed in the revenue laws of the United States, embraces and applies to all the territorial possessions of a foreign state, however widely separated, which are subject to the same supreme executive and legislative control.

3. HAMBURG FREE ZONE.

The free zone in Hamburg is in the German Customs Union; it is not a "country" in the sense that term is employed in the proviso to paragraph 626, tariff act of 1897, and in the matter of customs duties it is to be regarded as a part of the German Empire.

United States Court of Customs Appeals, April 10, 1911.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 7013 (T. D. 30569).

[Affirmed.]

*Walter Evans Hampton* for appellant.

*D. Frank Lloyd*, Assistant Attorney General ( *William K. Payne* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion the court:

L. Sonneborn Son (Inc.) made an importation at the port of New York of paraffin manufactured in and exported from the free zone in Hamburg, Germany. It was made from crude petroleum produced in Russia. The collector of customs assessed duty upon the importation under the proviso to paragraph 626 of the tariff act of 1897 at the rate of 1 ruble 80 copecks per pood, that being the rate of duty levied by Russia upon similar merchandise imported therein from the United States.

The appellant here, protestant below, among other claims, alleged that the merchandise was entitled to free entry under paragraph 633 of the tariff act of 1897 as "paraffin;" and, further, that it was not subject to the reciprocal or retaliatory provisions of the proviso to paragraph 626 of that act, in that it was produced in the free zone in Hamburg, Germany, wherein no duties were levied upon similar merchandise imported from the United States.

---

[1] Reported in T. D. 31504 (20 Treas. Dec., 735).

The relevant provisions of and proviso to paragraph 626 are as follows:

626. Oils: * * *; petroleum, crude or refined: *Provided*, That if there be imported into the United States crude petroleum, or the products of crude petroleum produced in any country which imposes a duty on petroleum or its products exported from the United States, there shall in such cases be levied, paid, and collected a duty upon said crude petroleum or its products so imported equal to the duty imposed by such country.

Paragraph 633 of the free list is as follows :

633. Paraffin.

The Board of General Appraisers found that the imported merchandise invoiced and returned by the appraiser as "paraffin oil" was par-. affin, and held that having been manufactured of crude petroleum and exported from the free zone in Hamburg it was subject to the proviso to paragraph 626 and dutiable at the rate of 10 marks per 100 kilos, that being the rate of duty levied by Germany upon similar merchandise imported therein from the United States. In the briefs and at the hearing it was conceded by all parties that if any rate of duty were applicable it was as decided by the board, and that the decision of the collector must, in any event, be accordingly modified. That question is, therefore, not before this court for determination. It was settled, and we think rightly, by the United States Circuit Court of Appeals for the Second District in United States *v.* Schoellkopf and United States *v.* Downing. (146 Fed. Rep., 56.)

It is insisted, however, by the appellant that the proviso to paragraph 626, quoted *supra*, should be confined in its application to the purview of that paragraph and did not extend to any other paragraphs of the tariff act of 1897, and particularly did not extend to modify, repeal, or in any wise affect paragraph 633, quoted *supra*. This point likewise received consideration in the Schoellkopf case, and the contrary held by a majority of the court. Mr. Justice Coxe, however, dissented from the opinion of the majority of the court, and the appellant here has renewed the point with much vigor and ability.

While it is the general rule of law, familiar to all lawyers, that a proviso shall be confined in its application to the purview of the paragraph of which it is a part, it is equally well settled that that rule is not controlling, and that effect must be given to the intent of Congress as manifested by a consideration of the whole act and all of its parts. Provisos are equally subject to the elementary principle of statutory construction that whenever possible effect must be given to all parts of an act, and this rule is of such imperative force that to accomplish that purpose the courts have uniformly held that to effect such every part of a law should yield a part of its plain import where by so doing effect can be given to other parts of the statute. (Lewis's Sutherland Statutory Construction, sec. 368, *et seq.*, and 352, *et seq.*, and authorities cited.)

The proviso to paragraph 626 bears such internal evidence of the intent of the Congress to extend its scope and effect beyond the purview of that paragraph that we think that construction must be adopted.

The kindred subjects of the proviso and paragraph are "oils," * * * "petroleum, crude or refined."

In the first view, this merchandise was described as an oil. · It is a paraffin oil. It is a paraffin oil produced from crude petroleum, and, therefore, one of the products of petroleum. Confining the proviso to the purview of the paragraph itself, we have in effect provided, without any advertence to paragraph 633, that where oils, of which paraffin oil is a class, when the product of petroleum, which is this merchandise, are the subject of duty by any country when exported · from the United States, they shall be the subject of an equivalent duty when exported from such country to the United States. Reading this provision in conjunction with paragraph 633 there is no conflict. Assuming paraffin oil paraffin, it is tantamount to a provision that paraffin oil shall be entitled to free entry, but when paraffin oil produced from petroleum is exported from a country levying duty upon the same merchandise when imported from the United States, it shall when imported from such country to the United States be subjected to the prescribed duty.

In another view, leading to the same conclusion, the purview of the paragraph is confined to petroleum *crude* or *refined*. The proviso extends to petroleum and *all the products of crude petroleum*. It appears from the record and various sources of judicial knowledge that there are many products of crude petroleum which are not petroleum refined. There is no escape from the conclusion that by the proviso the Congress had in mind products other than those enumerated in the purview of the paragraph. It further, likewise, appears that while paraffin is sometimes a product of petroleum it is not always such, and there are several classes of paraffin which are not the product of petroleum. In this light the intention of Congress, the necessary office of each paragraph, and the absence of conflict between them are apparent. The Congress provided that paraffin should be admitted free of duty. In the interests of reciprocity or retaliation, whichever spirit may have moved the enactment, it provided reciprocal or retaliatory duties upon crude petroleum, petroleum refined, and all other products of such, whether they should be refined petroleum or paraffin, when produced from petroleum, or what else. The very language of the proviso compasses a large variety of articles not included in the purview of the paragraph which is indisputable evidence of the intent of Congress to so extend its application.

This construction gives application to both the provisions exactly as the plain intent of Congress is manifested by considering all the pro-

visions of the act. That was the view taken by a majority of the court in the Schoellkopf case, and we think it sound.

In Arthur v. Lahey (96 U. S., 112) and American Net & Twine Co. v. Worthington (141 U. S., 468) and other cases cited and commented upon by counsel for appellants in their brief, the contending paragraphs were in effect repealing provisions, the very import of which, therefore, denied the possibility of their being read together and effect being given to each. They are for that reason not applicable.

The next contention of appellants, and one which was not tendered in the Schoellkopf case, but is here for the first time, is that because duties are not imposed upon paraffin in the free zone in Hamburg upon like merchandise imported from the United States that Hamburg is the *country* of exportation within the proviso to paragraph 626, and hence the retaliatory or reciprocal duties should not be 'imposed upon such merchandise imported from the free zone therein to the United States.

What constitutes a country in customs nomenclature has been the subject of decision by the Supreme Court. In Stairs v. Peaslee (18 How., 59 U. S., 521, 526) the court said:

\* \* \* *The word country in the revenue laws of the United States has always been construed to embrace all the possessions of a foreign State, however widely separated, which are subject to the same supreme·executive and legislative control.* The question was brought before the Treasury Department in 1817, and, on the 29th of September in that year, instructions were issued by the department, in a circular addressed to the different collectors, in which the construction above stated is given the word. The practice of the Government has ever since conformed to this construction, and it must be presumed that Congress, in its subsequent legislation on the subject, used the word according to its known and established interpretation.

Apart, however, from this consideration, we regard the construction of the Treasury Department as the true one. *Congress certainly could not have intended to refer to mere localities or geographical divisions without regard to the State or nation to which they belonged.* \* \* \* And, moreover, if the construction contended for by the plaintiff could be maintained it would soon be found that goods would not generally be exported directly to the United States from the principal market where they were procured, but sent to some other place, where they were not in demand, to be shipped to this country; \* \* \* neither the words of any revenue law·nor any policy of the Government would justify a construction alike injurious to the public and to the fair and honest importer.

It is contended, however, by the appellants that the general power of legislation and administration by the German central government did not extend to customs matters, and therefore this case is not within the scope of this decision, and that the power of general legislation only over a State did not deprive it of its character as a country for customs purposes.

The so-called "free zone" in Hamburg is but a part of the *State* of Hamburg. The State of Hamburg is one of the States of the German Empire. It possesses a legislative government and administrative

powers for certain purposes, even including subordinate customs revenue administration. The German Empire in its entirety represents a gradual evolution of several States or sovereignties from an independent existence into a central government. This result had its earliest inception in the Zollverein. In this all the States composing the union were sovereign and independent. Each State levied and administered its own customs and revenues. The next step in the course of federal consolidation or union, and it may be particularly noted in connection with the claims here made, was the customs union treaty of July 8, 1867. This particularly brought in closer connection the North German Bund, so-called, and German States lying beyond the line of the Main. The motto which was the fundamental idea of the customs union treaty of 1867 was "Germany forms one territory in matters of tariff and of trade, surrounded by common boundaries." It was in effect a union of all the contracting parties, many of which had previously by separate treaties effected the common purposes of the treaty of 1867. The motto of the customs union treaty of 1867 subsequently became that of the imperial constitution, which by its terms became an imperial law on the 16th of April, 1871. It recites:

ARTICLE 1. The territory of the bund shall consist of the States of * * * and Hamburg.

ART. 4. The following matters shall be under the supervision of the Empire and subject to the legislation of the same * * *:

(2) Legislation with respect to the tariff, commerce, and those taxes to be applied for imperial purposes; * * *.

ART. 34. The Hanse cities, Bremen and Hamburg, together with a part of their own or of the surrounding territory suitable for such purpose, shall remain free ports outside the common tariff borders, until such time as they shall request admission into the same.

ART. 35. The Empire has the exclusive right of legislation as to all tariff matters; * * *.

ART. 36. The collection and administration of the customs duties * * * is left to each State, within its own territory, so far as these functions have heretofore been exercised by each State.

The Kaiser supervises the observance of the legal conduct of affairs, by means of imperial officials, whom he appoints, with the consent of the committee of the Bundesrat on customs duties and taxes, to act in conjunction with the officials and directive boards of the several States.

*　　　*　　　*　　　*　　　*　　　*　　　*

ART. 38. The revenues from the customs and from the other taxes mentioned in article 35, so far as these latter are subject to imperial legislation, flow into the treasury of the Empire * * *.

By the provisions of the imperial constitution, therefore, the treaties between the several States in the Zollverein and the provisions of the customs union treaty of 1867 were merged in the imperial constitution, except as noted. The general power of tariff and customs legislation was vested in the Imperial Government through the Bundesrath and the Reichstag. The immediate collection of the customs and the

administration of the customs laws, where not otherwise provided for by imperial legislation, were conducted by State officials, but under the supervision of imperial officers appointed by the Crown and the funds paid into the imperial treasury.

The pertinent exception was the State of Hamburg, which reserved unto itself the right to remain a free port until it should otherwise consent and make proclamation of such fact.

On September 19, 1888, having previously consented to enter the imperial union for customs purposes, with the exception of a portion of its territory, such action was taken and results followed as shown by the following notice:

SEPTEMBER 19, 1888.

*Announcement of Hamburg's union with the customs district of Germany.*

The senate publishes the following for public notice:

The federal council has ordered, upon the proposal of the Hanse-town Hamburg, that the territory of Hamburg, with the exception of the remaining free-port district and the harbor at Cuxhaven, be annexed to the customs district.

The chancellor, in accordance with the authority vested in him by the federal council, has directed that this union go into effect on October 15.

The customs boundary of the remaining free-port district of Hamburg has the following course:

[Here follows description subsequently, but in a way not material to this argument, changed.]

The customs boundary around the harbor at Cuxhaven remains unchanged.

From the day of the customs union all the laws which apply to the German customs district with reference to the administration of the tariffs and imperial taxes, as well as the regulations already promulgated for those sections of Hamburg which previously belonged to the German customs union, in so far as they were not in force before in the part which is to be included, shall be in force and effect in the annexed district.

Done at the meeting of the Senate, Hamburg, September 19, 1888.

The State of Hamburg thus became a part of the German customs union and ceded all of that sovereignty to the Federal Empire or union, with the exception of the designated district within the territory of Hamburg.

Doubt having arisen as to the customs status of the River Elbe from Hamburg to its mouth in December, 1881, the Bundesrath included the River Elbe, together with the islands therein, in the common tariff district, with a provision freeing the ships to and from Hamburg from any action upon the part of the customs officials.

The free zone in Hamburg, it is thus seen, constitutes but a part of the territory of the State of Hamburg. The area which, as described in the record, of approximately 10 square miles is largely covered by warehouses and manufactories. It is not a separate sovereignty or municipality and has no separate municipal or sovereign existence. It is a part of the State of Hamburg, which possesses certain state powers and attributes of sovereignty. It has no political lines of demarcation.

Its separate existence is purely geographical. The State of Hamburg, of which it is a part, as such, has surrendered in pursuance of the terms of the imperial constitution all rights of customs legislation to the Federal Empire. Its administration of the customs laws is under the supervision and direction of the Federal Government, and the funds collected therefrom paid into the federal treasury. The State of Hamburg, as such, has surrendered the power of customs legislation to the Federal Empire, which has provided that paraffin imported from the United States shall pay a duty of 10 marks per 100 kilos, which law is in force within all parts of the State of Hamburg except in the free zone, and duties are collected by the officers of the State of Hamburg under the supervision of the federal officials upon all importations of petroleum or its products from the United States thereto.

So far, therefore, as the State of Hamburg, as such, is concerned, there is levied therein the duty stated upon crude petroleum and its products when imported from the United States.

Counsel for the appellants insists that, as the spirit of the provisions of paragraph 626 are in the nature of reciprocity and no duties are collected within the free zone in Hamburg, that spirit of reciprocity requires that no duties should be collected upon paraffin when imported at any place in the United States from the free zone in Hamburg. We do not think the conclusion follows from the premises. The equivalent proposition would be, confining the argument to Hamburg alone, conceding it the sovereignty to which these considerations should be confined, that if Hamburg opens but a single port or part of its territory to importations from the United States and closes the remainder the equivalent would be for the United States to open but one of its ports or parts to goods imported from Hamburg and close the remainder.

But we do not think there is the slightest tenable ground supporting the contention that Hamburg is a "country" within the language of the customs revenue laws. It is plainly, and particularly for customs purposes, a part of Germany, and Germany is the "country" within the proviso of paragraph 626 and customs law.

The testimony shows that the free zone in Hamburg is nothing more or less than an aggregation of warehouses and manufactories. The situation, though more extensive, is identical with the manufacturing warehouses operated under the law in this country. That limited territory, the free zone, which is occupied almost exclusively by warehouses and factories, affording but a fractional, if any, consumers' market for this merchandise, is surrounded by a series of German customhouses, and whenever any paraffin is taken from the free zone into any other part of Hamburg or introduced into the commerce of Germany the stated duty is collected.

The advantages enjoyed by the United States as afforded by the free zone in Hamburg are in no considerable degree greater or other than those afforded Hamburg and the whole Empire of Germany by the law authorizing the establishment of manufacturing warehouses in this country, the shipment of merchandise thereto, its manufacture therein and exportation therefrom from every country of the world free of duty. Any spirit of reciprocity, if such is afforded in this case, therefore, is satisfied by equivalent conditions afforded in this country to those afforded this country by Hamburg or Germany in the free zone in Hamburg.

We are of the opinion that the law was correctly interpreted by the Board of General Appraisers in its very able opinion and should be *affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.