## AUSTIN, BALDWIN & Co. *v.* UNITED STATES (No. 1600).[1]

1. "COST OF PRODUCTION"—PHONOGRAPH RECORDS.

    The compensation paid to talent for the production of phonograph records is an element in the "cost of production" of such records under paragraph L of section 3, tariff act of 1913.

2. CONSTRUCTION—PARAGRAPH L, SECTION 3, TARIFF ACT OF 1913.

    The provision in paragraph L of section 3, tariff act of 1913, "all general expenses to be estimated at not less than 10 per centum," does not authorize appraising officers to fix general expenses at any sum greater than 10 per cent of the total expenses which to them may seem proper and without regard to the actual general expenses.

3. "COST OF MATERIALS AND OF FABRICATION"—"GENERAL EXPENSES"—PARAGRAPH L OF SECTION 3, TARIFF ACT OF 1913.

    Money expended in the production of phonograph records for "locating room, moving and hire of piano, wages of boy at laboratory, and rent of laboratory, furniture, and curtains" is not a part of the "costs of materials and of fabrication," but within the category of "general expenses" under paragraph L of section 3, tariff act of 1913.

United States Court of Customs Appeals, April 10, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7756 (T. D. 35593).

[Reversed.]

*Comstock & Washburn* for appellants.

*Bert Hanson,* Assistant Attorney General (*Leland N. Wood* and *John J. Mulvoney,* special attorneys, of counsel), for the United States.

[Oral argument December 10, 1915, by Mr. Washburn and Mr. Hanson.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the question of whether the appraising officers proceeded upon a wrong principle in determining the appraised value of 127 wax disks manufactured in the United States and shipped as blanks to Barranquilla, Colombia, in South America, from which place they were subsequently imported into the United States at the port of Philadelphia bearing the record of vibrations produced thereon in Colombia either by the human voice or musical instruments. The importers entered the 127 disks at a value of $3 per disk, or a total of $381.

---

[1] Reported in T. D. 36505 (30 Treas. Dec., 1079).

In the form in which they were imported the disks were intended to be used as models for the production on copper disks of relief or cameo representations of the vibrations recorded in wax. A copper disk upon which such relief or cameo representations of sound vibrations have been imposed is known as a master matrix, and from it may be made, by electrotyping or other process, large numbers of other disks having intaglio reproductions of the vibrations recorded in relief on the copper disk and conforming substantially to those originally inscribed on the wax disk.

It appears from the record on reappraisement and the agreed statement of facts that the cost of producing the blank wax disks was 25 cents each; that a representative of the Victor Talking Machine Co. took the blank disks from Camden, N. J., to Barranquilla, Colombia, and thence proceeded inland, where he caused to be impressed on the disks a record of the vibrations which the disks bore when imported; that after the vibrations were recorded the representative of the company returned with the disks to Camden, N. J., via Barranquilla; that the representative of the company expended for the journey from Camden, N. J., to Barranquilla, Colombia, and return, $555.23; that his trip inland, return to Barranquilla, and stay inland, required the expenditure of $882.45, of which sum $146.55 was incurred to secure quarters, furniture, and services directly necessary for and connected with the production of the wax records; that the salary of the representative during the time he was inland making the wax records amounted to $95.86; that the sum of $1,486 was paid to the talent employed for the purpose of producing the special sound vibrations required by the company and recorded on the disks.

The appraising officers appraised the importation on the basis of the cost of production, which is required to be ascertained in the manner provided for in that part of paragraph L of section 3 of the tariff act of 1913, reading as follows:

L. That when the actual market value, as defined by law, of any article of imported merchandise, wholly or partly manufactured and subject to an ad valorem duty, or to a duty based in whole or in part on value, can not be ascertained to the satisfaction of the appraising officer, such officer shall use all available means in his power to ascertain the cost of production of such merchandise at the time of exportation to the United States, and at the place of manufacture, such cost of production to include the cost of materials and of fabrication, and all general expenses to be estimated at not less than 10 per centum, covering each and every outlay of whatsoever nature incident to such production, together with the expense of preparing and putting up such merchandise ready for shipment, and an addition of not less than 8 nor more than 50 per centum upon the total cost as thus ascertained; and in no case shall such merchandise be appraised upon original appraisal or reappraisement at less than the total cost of production as thus ascertained. * * *

The record discloses that the local appraiser determined the appraised value of the disks by adding together the cost of their manu-

facture as blanks, the compensation paid to talent, 10 per cent for general expenses, and 8 per cent for profit. The importers were not satisfied with the value fixed by the local appraiser, and accordingly they demanded a reappraisement, which was made in due course by General Appraiser McClelland, who sustained the entered value. From the action of the general appraiser the collector appealed to a board of three general appraisers sitting as a board of reappraisement. The reappraisement board found that the actual cost of producing the wax records was as follows: One hundred and twenty-seven blank disks, at 25 cents each, $31.75; compensation of talent for the production of the vibrations recorded on the 127 disks, $1,486; salary of the representative of the Victor Talking Machine Co. while superintending the making of the wax records, $95.88; other expenses incurred for service, furniture, piano, and laboratory, $146.55. The sum of those items was $1,760.18, to which the board added 20 per cent thereof, or $352.03, for general expenses, and 8 per cent thereof, or $140.81, for profit, and thus secured a grand total of $2,253.02, from which $1,486, the total of the several sums paid as compensation to different artists, was subtracted in order to arrive at the sum chargeable equally to all the disks. The board found that the sum so chargeable was $767.02, and that $6.06 represented the cost of producing each disk, exclusive of the compensation paid to talent. To this $6.06 was added the cost of talent employed for the making of each disk, and the sum so obtained was considered by the board to be the total cost of production and therefore the value at which the disk should be appraised under that part of paragraph L to which we have already referred. The goods were assessed by the collector on the value thus fixed, and the importers protested that the assessment was incorrect, upon the ground that the reappraisement board proceeded upon a wrong principle and contrary to law in appraising the importation. The general appraisers, sitting as a classification board, overruled the protest, and from that decision the importers have prosecuted this appeal.

As the appraisement in controversy was made under that part of paragraph L which prescribes the method of appraising imported merchandise when the actual market value thereof can not be determined to the satisfaction of appraising officers, it was incumbent on such officers to ascertain the cost of production *at the place of manufacture and at the time of exportation to the United States.* By the terms of the paragraph the cost of production includes the cost of materials and of fabrication, general expenses to be estimated at not less than 10 per cent on every outlay incident to the production of the goods at the time and place specified in the paragraph, the expense of preparing and putting up the merchandise ready for shipment, and an addition of not less than 8 nor more than 50 per cent of the total cost as thus ascertained.

The question in the case is, Did the appraising officers include in the cost of production items not contemplated by the statute and thereby fix the cost of production, and consequently the appraised value, at a greater sum than the law warranted?

The importers contend, first, that the compensation paid to talent can not be considered either as a cost of material or a cost of fabrication, and that therefore such compensation should not have been considered as an element in determining the appraised value of the disks; second, that in ascertaining the cost of production the board added to the cost of material and fabrication not only the actual general expenses, but also 20 per cent of the total outlay as estimated general expenses, thereby taking account twice of general expenses, and calculating the estimate of general expenses at twice the percentage provided for by the statute. Whether "cost of materials and of fabrication" should be given a meaning which will confine it to the expense incurred for the actual physical constituents of the article and for the processing of such constituents only, or should be accorded an interpretation broad enough to include the expense of all materials necessarily consumed and all processes necessarily employed in the manufacture of the goods, we are not prepared to say at this time. In our opinion, that issue has been taken out of the case by reason of the fact that no cost of materials or of fabrication is here involved other than that of cost of component materials or of processes or agencies applied to such materials in order to complete the records in wax. It is admitted that the cost of materials and of fabricating the blank wax disks was 25 cents each, and from that it results that there can be no controversy as to the cost of materials found in the importation, inasmuch as it clearly appears that the materials of the blank disks are identical with those of the completed wax records.

The first contention of the importers is based upon the assumption that the provision in paragraph L for "the cost of materials and of fabrication" was intended to cover only those expenses which have some direct physical or mechanical relation to the production of the article manufactured, and upon the further assumption that vibrations, whether produced by the human voice or by musical instruments, have no physical intervention in the making of the wax records and can not properly be regarded as tangible factors in their fabrication.

Whatever might be said of the first assumption, it is certain that the second is at variance with the facts and must be rejected. The vibrations produced by the human voice or by musical instruments act directly and *physically* on the recording machine, and by agitating a membrane or thin plate give to the needle attached thereto the motions which enable it to cut into the rotating wax disk a continu-

ous groove marked by alternate elevations and depressions. An instrumentality accomplishing such results as that is just as much a physical force as is the power which rotates the disk, and the cutting of an undulating line in wax by a vibratory force or power must be regarded as a processing of material just as much as if the same result had been achieved by hand or the operation of some delicate mechanism. To secure the vibrations required to produce a particular and special kind of cut in the wax disk necessitated the expenditure of a definite sum of money, and that definite sum of money represents the cost of the force applied, and therefore must be regarded as a proper cost of fabrication.

The Government insists that the importers' second contention can not be sustained, first, because appraising officers were given by paragraph L the discretion to estimate general expenses at any amount not less than 10 per cent of the total cost of production and were therefore authorized to fix such general expenses at 20 per cent of the total cost or even at a larger sum should their judgment so determine; second, because the expenses ($146.55) incurred for carriage for locating room, for tuning piano, moving piano, hire of boy at laboratory, rental of piano and of laboratory, furniture, and curtains, were in fact costs of fabrication and not general expenses, and were therefore properly included in the cost of production in addition to the estimate of 20 per cent made by appraising officers for general expenses.

The phrase "general expenses to be estimated at not less than 10 per centum; covering each and every outlay of whatsoever nature incident to such production," may be susceptible of the construction put upon it by the Government, but certainly it is also open to the interpretation that it establishes a minimum for general expenses and that the ascertained actual general expenses must be accepted by the appraising officers in calculating the cost of production unless such expenses fall below 10 per cent of the total cost, in which event they must be raised to the minimum. Of the two interpretations we incline to the latter, because we are loath to believe that it was the purpose of Congress to confer upon appraising officers so wide a discretion as that contended for, and because we think the history of the legislation fairly warrants the conclusion that Congress intended that the actual general expenses should be considered as a factor in arriving at the cost of production unless they fell below 10 per cent of the total cost.

Section 11 of the act of June 10, 1890, provided that appraising officers should include as an item of the cost of production "all general expenses covering each and every outlay of whatsoever nature incident to such production." That particular part of section 11 was reenacted word for word by section 32 of the act of 1897, and

was modified by the acts of 1909 and 1913 only to the extent that subsection 11 of section 28 of the former and paragraph L of section 3 of the latter required the inclusion in the cost of production of all general expenses "to be estimated at not less than 10 per centum, covering each and every outlay of whatsoever nature incident to such production." Just why the modification was made does not affirmatively appear from the reports of the congressional committees which had under consideration the administrative provisions of the tariff acts last named. We do know, however, from the documents submitted to the Committee on Ways and Means, that the Board of General Appraisers having been invited to comment on proposed changes to the administrative act of 1909, in speaking of this precise modification, called attention to the fact that almost without exception the general expense item in cost statements was inadequate. Referring to the item of general expense, the board said:

No such item can be fairly computed at less than 10 per cent, and the exceeding difficulty of correctly ascertaining the same on this side makes advisable a minimum fixed by law.

Apart from all that, however, we think it is apparent that the change would not have been made unless the Congress had reason to believe that general expenses might be understated and that in consequence appraising officers, who were dependent in a large measure upon the accuracy of importers' statements for the correctness of appraisements, might be led to undervalue goods the actual market value of which in the country from which exported could not be ascertained. With an existent or apprehended evil of that kind in mind, the natural thing for Congress to do was to fix a minimum for general expenses which would afford to the revenues a reasonable measure of protection. That minimum, in our opinion, was fixed at 10 per cent of the total outlay, and it is fair to assume that that percentage was not a random estimate, but was based upon what seemed to be the general experience of the commercial world. From the fact that appraising officers are required by the paragraph in question to include general expenses *estimated at not less than 10 per cent of the total cost*, it can not safely be reasoned out that Congress intended to confer on appraising officers the discretion to ignore entirely the true actual general expenses and to fix them arbitrarily at any amount above 10 per cent which to them might seem proper. That Congress had no such purpose as that we think is evidenced by the fact that the importers were required by paragraph J to make return of the cost of production, including therein the elements of cost mentioned in paragraph L, and paragraph L, which makes the cost of production the measure of value, not only directs the appraising officer to ascertain such cost *by all available means in his power*, but takes special care to enumerate the several elements which must be considered by

him in calculating it. We are decidedly, of the opinion that paragraph L establishes a rule of appraisement designed to reasonably protect the Government from undervaluation and the importer from overvaluation, and that it was not the purpose of Congress to permit the appraising officer to fix values regardless of the facts. In other words, in figuring out the cost of production, the appraising officer must take into account the cost of fabrication, the cost of materials, and the general expenses in the amount which, using every available means in his power, he finds them actually to be, provided, however, that general expenses can in no event be calculated at less than 10 per cent of the total outlay.

The sum of $146.55 paid for locating room, moving and hire of piano, wages of boy at laboratory, and rent of laboratory, furniture, and curtains can not, we think, be regarded as costs of materials and of fabrication. The items mentioned were not chargeable to any one disk, but to the entire output, and consequently they properly fall within the category of general expenses. The reappraisement board included in the cost of production not only the expenditure made for the items just mentioned, but also 20 per cent of the total outlay as an estimate of general expenses. That method of calculating the cost of production can not, we think, be justified even under the construction put upon paragraph L by the Government, inasmuch as it necessarily implies that both an estimate of general expenses and actual general expenses as they are truly found to be must be considered as factors in the cost of production.

We are of opinion that as the ascertained general expenses exceeded 10 per cent of the total outlay, the board proceeded upon a wrong principle when it included in the cost of production not only the actual general expenses but also 20 per cent of the entire expenditure incident to such production. The decision of the Board of General Appraisers sustaining the reappraisement of the board of reappraisement is therefore *reversed*.

---

## ON HEARING OF APPLICATION FOR FORM OF JUDGMENT AND MANDATE.

SMITH, Judge:

On the appeal taken in this case the decision of the board was reversed by this court on April 10, 1916, and on the same day the court ordered that the parties be further heard by brief and argument upon the question of the form of judgment to be entered herein and of the mandate to be issued to said board, and as to the form of judgment and mandate the court makes the following decision:

The appeal was submitted to this court on the following stipulation:

*Stipulation.*—United States General Appraisers. Board No. Three. In the matter of protest No. 769782 of Austin, Baldwin & Co.

It is hereby stipulated and agreed by and between counsel for the importers and Assistant Attorney General for the United States that the record in the reappraisement proceedings (reappraisement No. 73317) before the board, consisting of oral testimony, which was subsequently reduced to the form of an agreed statement of facts, may, as set forth in said agreed statement of facts, together with the accompanying schedules and papers, bound and contained in the accompanying envelope marked "A," be regarded as the record in the reappraisement proceedings, and that such record so constituted may be incorporated herein as part of the record in the above-entitled case.

Dated New York, January 14, 1915.

COMSTOCK & WASHBURN,
*Attorneys for Importers.*

BERT HANSON,
*Assistant Attorney General for the United States.* L. J. D.

Indorsed: U. S. Gen. Apprs. Received April 16, 1915.

The agreed statement of facts contained the following provisions:

8. That the question presented for determination is whether the whole or any part (and if so, what part) of the expenses hereafter referred to in paragraphs 9, 10, 11, and 12 of this agreed statement of facts should be included or excluded in fixing the valuation for dutiable purposes of the wax disks in question.

9. That the expenses of the agent or representative of the company from Camden, N. J., to Barranquilla, Colombia, South America, and return was $555.23, as set forth in Schedule A hereto annexed.

10. That the expenses of the agent of the company from Barranquilla inland, during his stay inland, and return to Barranquilla amounted to $882.45, as set forth in Schedule B thereto annexed.

11. That the salary paid to the representative of the company while inland, taking the sound recordings on the wax disks in question, was $95.86.

12. That the values of the wax disks having the track or sound recordings thereon was found by the local appraiser and, as set forth in Schedule C, hereto annexed, includes the value of the wax disks before any record has been made thereon, the salaries or compensation paid to the talent for the sound recordings, plus 10 per centum (10 per cent) for general expenses and plus 8 per centum (8 per cent) for profit.

Dated New York, May 13, 1914.

From the record it appeared that the reappraisement board found that the actual cost of producing the wax records was as follows:

127 blank disks, at 25 cents each........................................... $31.75
Compensation of talent for the production of the vibrations recorded on the
    127 disks................................................................. 1,486.00
Salary of the representative of the Victor Talking Machine Co. while super-
    intending the making of the wax records................................. 95.88
Other expenses incurred for service, furniture, piano, and laboratory...... 146.55
                                                    ─────────
    Total.................................................................. 1,760.18

To this total the board added for general expenses 20 per cent thereof, or $352.03, and also 8 per cent thereof, or $140.81, for profit, making a grand total of $2,253.02. From this grand total the board subtracted $1,486, paid as compensation to different artists, and found that the sum chargeable equally to all the disks was $767.02, which, divided by 127 disks, produced the sum of $6.06, which rep-

resented the cost of each disk, exclusive of compensation paid to secure the vibrations.   To this $6.06 was added the sum paid to the artist employed for a particular disk, and the amount thus obtained was considered by the board to be the total cost of production and therefore the value at which that disk should be appraised.

The Board of General Appraisers, sitting as a classification board, sustained the reappraisement, and an appeal was taken from that decision to this court.   This court held that the sum of $1,486, compensation paid to talent, was a proper cost of fabrication; that the sum of $95.88, paid for superintending the making of wax records, and the sum of $146.55, expenses incurred for service, furniture, piano, and laboratory, were general expenses; and that 8 per cent of the total outlay should be added for profit.   We further held that as the actual general expenses were more than 10 per cent of the total cost of production, the reappraisement board had no authority to add 20 per cent to the total outlay as estimated general expenses.   From this it results that this court found, in effect, that the total cost of producing 127 disks calculated in the manner prescribed in paragraph L was $1,900.99.

The stipulation and the agreed statement of facts presented for the decision of the board and the determination of this court on appeal the question whether the whole or any part of the expenses mentioned in paragraphs 9, 10, 11, and 12 of the agreed statement of facts should be included or excluded in fixing the valuation for dutiable purposes of the wax disks in question.   That was simply another way of asking the court to determine what was the valuation for dutiable purposes of the wax disks in question.   We found, in effect, that the valuation of the 127 disks for dutiable purposes was $1,900.99, and we must hold, by reason of the stipulation and the agreed statement of facts, that liquidation should take place on that basis.

It appears that, in addition to the protest based on the appraisement, there was in the case a protest against the classification of the merchandise.   As to whether that protest was well taken or not was not decided by this court.   Inasmuch, however, as it was stated in open court on the hearing as to the form of mandate that no point would be made as to the classification of the merchandise, the decision of the board as to that protest (No. 769781) should be affirmed, and it is so ordered.

The form of judgment to be entered on the decision of the appeal herein and the form of mandate to be issued to the board should be as follows:

Said appeal having heretofore been brought on to be heard before the court and due consideration thereon having been had, it is

Ordered, That the decision of the Board of United States General Appraisers as to protest No. 769781, directed to the classification of the merchandise be affirmed, and

that as to protest No. 769782, based on the reappraisement of the merchandise, the decision of the board be reversed.

The liquidation should be had on the basis of a valuation for dutiable purposes of $1,900.99 for the 127 disks involved, and the case is hereby remanded to the board for further proceedings.

Judgment and mandate in accordance herewith are ordered.