# FRIEDMAN v. UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 221. Argued March 17, 1921.—Decided March 28, 1921.

Section 2347 of the Revised Statutes, in providing that public coal lands may be entered upon payment of "not less than " ten dollars per acre and "not less than " twenty dollars per acre, according to their distance from a completed railroad, sets up those prices as *minima* and by implication empowers the Secretary of the Interior to charge higher prices proportionate to the value of tracts sold. P. 469.

54 Ct. Clms. 225, affirmed.

THE case is stated in the opinion.

*Mr. Charles A. Keigwin,* with whom *Mr. William R. Andrews* was on the brief, for appellant.

*The Solicitor General,* with whom *Mr. W. Marvin Smith* was on the brief, for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action to recover the sum of $3,600, excessive payment exacted by the Secretary of the Interior for 120 acres of coal land, which plaintiff (we so designate him in this opinion) was entitled to enter and did enter under § 2347 of the Revised Statutes.

The Court of Claims dismissed the petition and from its judgment this appeal is prosecuted.

The right of plaintiff to enter the land is not disputed. The dispute is as to the price prescribed by § 2347. Its provision is that payment shall be made of not less than $10 per acre if the lands selected be more than 15 miles

from a completed railroad, and not less than $20 per acre if they be within 15 miles of the railroad.

The entry of plaintiff was within 15 miles of the railroad and the Secretary required the payment of $50 per acre. The requirement is attacked as beyond the power of the Secretary, it being in excess of the statutory price which, it is contended, is $20 per acre; and to sustain the attack there is adduced the prior practice of the Interior Department and cases whose analogy, it is contended, demonstrate that the words "not *less* than twenty dollars per acre" mean not *more* than twenty dollars per acre. The answer to the contention would seem necessarily to be that "less" and "more" are words of contrast—indeed of opposition, and cannot be confounded. It is easy to see that if their difference should be disregarded in dealing with the things of the world, sensible or insensible, the resulting confusion would be hard to describe.

Plaintiff makes the words even more facile to management than in the above contention and makes them exclude all freedom of judgment and choice of price which they seem not only to imply but to require, in the administration of § 2347. In support of the liberty of identifying or confusing different things plaintiff invokes the practice of the Interior Department from 1873 to 1907, and urges that Congress by silence gave sanction and approval to the practice.

The inference deduced from the practice and the asserted sanction we cannot accept. The practice was but the exercise of administration by the Department upon the then circumstances, deemed proper and adequate then and accepted as such by Congress.

In 1907 there was a change of conditions and they dictated a change in administration and, in aid of a judgment of values and its exercise under the direction of § 2347, coal lands were subjected to classification and appraisement, a procedure not arbitrary but safe and sensible, establish-

ing a proportional relation between the payment made and the value of the lands received. And` this is consonant with the statute; indeed, is its direction, if its words. be considered. There has been no protesting objection from Congress, and the Executive and Legislative Departments have been in accord for fourteen years.. The present prac- tice of the Interior Department therefore has the same confirmation that plaintiff asserts for its prior practice. .

Plaintiff however, contends that § 2347 is.the successor of prior legislation and that by such legislation, and deci- sions under it, the words "not less than" of that section have been made the equivalent "of the minimum and minimum price" of.prior legislation and that $20 per acre is·the "sole price fixed by law" for lands within fifteen miles of a completed railroad.

The legislation referred to is an Act of July 1, 1864, c. 205, 13 Stat. 343; an Act of March 3, 1865, c. 107, 13 Stat. 529; and an Act of March 3, 1873, c. 279, 17 Stat. 607; the latter statute becoming § 2347 and other sections.

The first act provided for the sale of coal lands at public auction "at a minimum price of twenty dollars per.acre"; and that "any lands not thus disposed of" should "there- after be liable to private entry at said minimum." The second act provided that coal land could be entered by a citizen actually engaged in mining upon it "at the mini- mum price of twenty dollars per acre, fixed in the coal and town property act of" July 1, 1864. The third act omits provision for offering coal lands at auction and subjects them to private entry at not less than $10 or $20 an acre, according to distance from a completed railroad. This provision became § 2347.

These acts were the successors of one another in general policy but not in details. In the latter they differed in provision and progressed to the explicit declarations of § 2347 and their inevitable meaning. And there is nothing to the contrary in *Colorado Coal & Iron Co.* v. *United*

*States*, 123 U. S. 307, 325. The case, indeed, was concerned with other provisions than those involved here.

We need not go beyond this general exposition. It would extend this opinion to a repellent length to trace and comment upon the details and refinements of plaintiff's reasoning, and upon the analogies he urges of the price of lands under the preëmption and other laws.

We are not impressed with the contention that if the price of $20 an acre is not the fixed and ultimate price there is no test of price and that the Secretary of the Interior "may charge what price he chooses . . . no law putting any restraint upon his action," and that the "sale of coal lands may be stopped altogether if, for any reason, the Secretary considers that to be judicious or desirable." This is tantamount to saying that the Secretary may abuse his trust and the power conferred upon him to execute it. There is no argument against conferring power or denying power in the assertion that it may be abused. The world acts and must act upon a different consideration. Government would otherwise be impossible. Besides, there is no contention that there is an arbitrary abuse of power in the present case, and when such abuse shall occur a remedy may be of concern and no doubt will be found.

*Judgment affirmed.*

MR. JUSTICE CLARKE took no part in the consideration and decision of this case.