UNITED STATES *v.* AMERICAN ANILINE PRODUCTS, INC. (No. 3817)[1]

[1] T. D. 47399.

United States Court of Customs and Patent Appeals, November 5, 1934

*Joseph R. Jackson*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*John R. Rafter* for appellee.
*James W. Bevans, amicus curiae.*

[Oral argument October 10, 1934, by Mr. Folks, Mr. Rafter, and Mr. Bevans

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, adjudging the dutiable value of certain alizarine sky blue "B"

powder, a coal-tar dye, imported from Belgium, to be $2.65 per pound United States value under section 402 (d) of the Tariff Act of 1922. Eight appeals to reappraisement are involved in the judgment of the lower court, the numbers of which are set out in the schedule accompanying such judgment.

The shipments of the merchandise involved herein arrived at the port of New York between the dates of April 10, 1926 and June 22, 1927. It appears that reappraisement No. 64965 is a "test case," and the other reappraisements involve "duress entries" to meet advances made by the appraiser.

In the test case the merchandise was entered at $2.71 per pound as the United States value under said section 402 (d). It was appraised at the United States value of $2.93 per pound by the appraiser at the port of New York.

The remainder of the importations were entered under "duress" at values from $2.82 to $3 per pound, but in all cases the importer, appellee, claimed the United States value to be $2.71 per pound. It is conceded that the merchandise was dutiable under paragraph 28 of said Tariff Act of 1922 at 7 cents per pound and 45 per centum ad valorem.

The single judge sitting as a trial court in reappraisement sustained the importer's claim of dutiable value of $2.71 per pound. Upon appeal by the United States the Customs Court, Third Division, found the dutiable value of the merchandise to be $2.65 per pound and entered judgment accordingly. From such judgment the United States took this appeal.

With the permission of the court, James W. Bevans, Esquire, appeared as *amicus curiae* herein and filed a brief and participated in the oral argument.

There is but one question presented by this appeal, and that is whether, on the record before us, in finding the United States value of the imported dye here involved, a deduction of 8 per centum for profit may be made from the United States selling price of such or similar imported merchandise at the time of exportation of the instant merchandise, which selling price both the trial court and the appellate division found to be $4.70 per pound.

Neither of the parties complains of any of the deductions from the United States selling price made by the trial court and the appellate division for general expenses, cost of transportation, etc.

Section 402 (d) of the Tariff Act of 1922 reads as follows:

Sec. 402 (d). The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses

from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The trial court apparently construed the words "profits not to exceed 8 per centum" as requiring an arbitrary deduction of 8 per centum from the United States selling price of "such or similar imported merchandise" in determining the United States value of the dye in question. Upon appeal the appellate division, as we construe its decision, disagreed with the trial court with respect to the construction of the words "profits not to exceed 8 per centum" and held that the profit to be deducted is the profit made by the dye industry dealing in the imported merchandise and other dyes, whether similar or otherwise. In its decision we find the following:

* * * Witnesses for both the importer and the Government stated that the usual profit made in the dye industry is 8 per centum.

The first question to be determined is the proper construction of said section 402 (d); insofar as it relates to allowances for profits in determining United States value.

The case presents four possible interpretations to be given to said section respecting the question of profits:

1. The method pursued by the local appraiser in appraising the merchandise involved, which appears from the testimony to have been as follows: The United States selling price of "such or similar imported merchandise" at the time of exportation of the merchandise in question was ascertained to be $4.70 per pound, less 2 per centum discount, or $4.61. From the selling price of $4.61 he deducted 8 per centum for general expenses of the importer of the involved merchandise, leaving, as testified by the appraiser, $4.27. He then deducted from that sum 7 cents per pound for specific duty and 3 cents per pound for freight, insurance, etc., upon the involved merchandise, leaving $4.17. He made no deduction for profit. This sum of $4.17 was then divided by 145 in order to deduct the 45 per centum duty upon the involved merchandise. The appraiser testified that the result of this division was $2.93, which he found to be the United States value of the involved merchandise. As a matter of fact, dividing $4.17 by 145 gives a result of $2.88, instead of $2.93 as testified by the appraiser. Having tentatively found the United States value to be $2.93, he then added together the cost of the involved merchandise, which was $3 per pound, and 45 per centum duty on said $2.93, which was $1.32, plus 7 cents per pound for specific duty, plus 3 cents per pound for freight and insurance, plus 8 per centum of the selling price of "such or similar imported merchandise" for general expense, and, finding that this sum was in excess of $4.61, the United States selling price of "such or similar merchandise", he

concluded that there was no profit allowable to the importer of the involved merchandise in ascertaining its United States value.

By this method no allowances were made with respect to "such or similar imported merchandise", but all allowances were made with respect to the involved merchandise.

2. The next possible method is that followed by the trial court, viz, construing section 402 (d) to require the deduction of 8 per centum from the United States selling price of the prototype merchandise, regardless of whether there was any profit in the sale of the prototype merchandise or prospective profit in the sale of the involved merchandise.

3. The method apparently pursued by the appellate division was to determine the United States selling price of "such or similar imported merchandise" and to make deductions therefrom for general expenses, transportation, etc., with respect to "such or similar merchandise", plus such deduction for profit, not exceeding 8 per centum, as it was shown was usually made by the dye industry as a whole dealing in the imported merchandise. Inasmuch as the record showed that in the dye business generally a profit of 8 per centum was made, that amount was deducted from the United States selling price of $4.70 (neither the single judge nor the appellate division took into account the 2 per centum discount from the United States selling price of $4.70), together with the other deductions referred to, in arriving at United States value under section 402 (d).

4. The fourth method is that urged by the Government, and is wholly in accord with the method followed by the appellate division except that it insists that the profit made by the dye industry generally should not be considered, but that the profit should be determined by the ordinary profit made by the trade on such merchandise as that in question, or upon merchandise similar thereto.

We will consider these four methods in the order above named.

At the outset we would observe that it is very difficult to construe said section 402 (d) in any satisfactory way, and its meaning is very obscure in some respects. The best that can be done is so to construe it as to make it reasonably workable, if possible.

The greatest difficulty is in determining whether the allowances provided for in said section shall be made with respect to involved imported merchandise or with respect to "such or similar imported merchandise" in determining United States value under said section 402 (d). We would have no hesitation in holding that the allowances provided for relate to "such or similar imported merchandise" were it not for the fact that among the allowances provided for is a "commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase." This provision would seem to relate to involved imported merchan-

dise and not to "such or similar imported merchandise"; whether it does so relate we need not here determine. However, to hold that the allowance for profit provided for in the section relates to prospective profit upon the involved merchandise, and not to profits upon "such or similar imported merchandise" would make the section wholly unworkable so far as the question of profit is involved because, so far as the instant merchandise is concerned, the profit prospectively to be realized depends upon the amount of duty paid, and the amount of duty to be paid depends upon the amount of profit allowed. In other words, if the allowance of profit has no relation to "such or similar imported merchandise," except the selling price thereof, there is no way by which deduction for duty and profit may be determined in arriving at the United States value under the section.

We are therefore compelled to reject the first method above set out, for we must assume that Congress contemplated a method that would be reasonably workable. We think it proper to say that counsel for the parties hereto and the *amicus curiae* are in accord with the above conclusion.

As to the second method of a flat deduction of 8 per centum from the selling price for profit in all cases, which was the method apparently adopted by the trial court, we would observe that to adopt this method would be to read out of the statute the words "not to exceed." If Congress intended that there should be a flat deduction of 8 per centum from the United States selling price of "such or similar imported merchandise" for profit, we think it would have said so in plain language by omitting the words "not to exceed" from the provision relating to an allowance for profits. It is well established that, in the interpretation of statutes, wherever possible, effect will be given to all parts of the act. *Sonneborn Sons* v. *United States*, 1 Ct. Cust. Appls. 443, T. D. 31504.

In the case of *Stuyvesant Ins. Co.* v. *Jacksonville Oil Mill*, 10 F. (2d) 54, the Circuit Court of Appeals, Sixth Circuit, in construing the words "not exceeding" in an insurance policy, said:

* * * The term "not exceeding" is of frequent use, and, in the absence of qualification, is usually, if not always, one of limitation only. These words, when found in an insurance policy as a part of the statement of the amount of insurance, necessarily mean that the liability of the insurer shall not be more, but *may be less*, than the amount stated. * * * (Italics ours.)

It is true that the words of the provision under consideration are "not to exceed," but we think these words are synonymous with the expression "not exceeding," and this court so regarded them in the case of *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318, where it said, respecting section 402 (d) under consideration:

* * * Therefore, while the section gives to the foreign importer a commission not exceeding 6 per centum, if he incurs such expense, on the other hand it

gives to the American importer and purchaser an additional allowance *up to* 8 per centum for expenses in importing his goods, and allows him profits of *not exceeding* 8 per centum. (Italics ours.)

In the case of *Friedman* v. *United States*, 255 U. S. 468, the court was called upon to construe the words "not less than $10 per acre" and "not less than $20 per acre" in a statute relating to the price of public coal lands. It was argued that the provisions should be con-- strued as fixing a flat price of $10 and $20 per acre. This contention was rejected by the court and it was held that the provisions referred to fixed only the *minimum* prices of such lands. See also *Austin, Baldwin & Co.* v. *United States*, 7 Ct. Cust. Appls. 186, T. D. 36505.

We therefore reject the second method hereinbefore set out and hold that, in a reappraisement proceeding, before any allowance for profit can be made in determining United States value under section 402 (d), the amount thereof must be established by evidence. If the full amount of 8 per centum is claimed, it would of course be sufficient to establish such amount, without establishing the actual amount, if any, in excess of 8 per centum of the United States selling price of "such or similar imported merchandise."

With respect to the third method hereinbefore set out, as we read the decision of the appellate division, all allowances were made with respect to "such or similar imported merchandise" and not with respect to the involved merchandise. In its decision it quoted from a prior decision of that court, viz, *United States* v. *Carbic Color & Chemical Co.*, T. D. 40859, involving the construction of said section 402 (d), as follows:

\* \* \* It is clearly the intention of the law that the net proceeds from the prototype sale shall govern the appraisement of the instant merchandise, and that the net amount of the proceeds is to be ascertained by subtracting from the prototype sale price transportation and merchandising costs connected with the prototype merchandise. That is the plain reading of the law, and it squares with a natural, common-sense method of administering the law.

The merchandise must be offered for sale in the United States. So foreign invoice prices do not represent sales or offers to sell within the meaning of subdivision (d) of section 402. Such invoices represent offers made abroad. It is only resales in the United States, or offers to sell in the United States, which furnish a basis for appraisements under subdivision (d).

Again, sales prices under normal conditions are built upon a rather definite price structure. More and more the business world is adopting cost-finding systems and selling at cost plus a profit. So, in order that the prototype sale shall as far as possible be a true index of value, it is essential that there shall be deducted from the prototype sale the transportation and merchandising costs connected with the prototype merchandise. To instead make allowances based upon expenses connected with other merchandise arriving at a later date is both arbitrary and illogical.

The appellate division in its decision herein also quotes from the opinion of this court in the case of *United States* v. *Beer & Co.*, 15 Ct. Cust. Appls. 140, T. D. 42215, with respect to deductions to be

made from the United States selling price of "such or similar imported merchandise", as follows:

First. Duty.
Second. Cost of transportation and insurance.
Third. Other necessary expenses.
Fourth. Profits not to exceed 8 per centum.
Fifth. General expenses not to exceed 8 per centum.

The statute therefore directs that 8 per centum be severally deducted for profits and expenses. Eight per centum of what? Manifestly, 8 per centum of the *price at which the merchandise is sold*, mentioned in the section, for to no other subject could this language be assigned. If it were to apply to the original cost of the article, it would be reasonable to presume that the language of the statute would have so indicated.

On the other hand, the inaccuracies of the method suggested by T. D. 39297 are apparent. While section 402 (d) provides equally for 8 per centum for profits and 8 per centum for general expenses, without discrimination, the method provided by T. D. 39297 makes them unequal in their final allowance, one percentage being computed on one amount and the other on an entirely different amount.  *  *  *

With respect to said last-cited case, it should be said that none of the questions here in issue was there involved. No question was there raised as to the percentages of profits and general expenses allowable, but the question was whether such percentages should be computed upon the selling price of "such or similar imported merchandise" or upon another basis set out in a Treasury regulation. This court held that such percentages should be computed upon the selling price of "such or similar imported merchandise", and this was done by the appellate division in the case at bar.

In the case of purchased goods we think the deductions from the United States selling price of "such or similar imported merchandise" should be determined with respect to said merchandise. The profits to be ascertained are, in our opinion, the profits usually realized in the sale of "such or similar imported merchandise." Whatever profits are ordinarily realized in the sale of "such or similar imported merchandise" should be deducted from the United States selling price of such merchandise, up to, but not exceeding, 8 per centum of such price.

In the case at bar the appellate division, however, in determining United States value, made an allowance for profit of 8 per centum of the selling price of "such or similar imported merchandise" upon testimony that the usual profit made in the dye industry is 8 per centum. It is to be noted that the same witness who so testified also testified that the average profit made upon such merchandise as that here involved was less than 8 per centum. We think the lower court erred in holding that the profit made by the dye industry generally furnished a basis for an allowance of 8 per centum profit in the case at bar.

We believe the statute contemplates. an allowance for profit upon "such or similar imported merchandise," and we do not think it ·could be maintained that all imported dyes are similar to the alizarine blue dye here in question, a coal-tar product. We may take judicial notice that dyes are of two general classes, natural and synthetic; also that synthetic dyes are divided into many groups or classes.

See Encyclopaedia Britannica (14th ed.), volume 7, page 796 *et seq.* The profits made by the industry may greatly differ upon different ·classes of dyes, owing to the presence or degree of competition, and we do not think that Congress could have contemplated an allowance for profit upon a particular kind of merchandise based upon a general profit of an industry dealing also in merchandise that was not similar to such particular kind of merchandise. Even coal-tar dyes may not be similar to each other in the usual tariff sense. *General Dyestuff Corp.* v. *United States*, 21 C. C. P. A. (Customs) 89, T. D. 46409. Furthermore, presumably the dye industry deals in dyes that are not imported, and it could hardly be said that all domestic dyes are similar to the dye here involved.

Both counsel for appellee and *amicus curiae* contend that the rule provided for in section 402 (e) for determining profit as an element of cost of production should be applied in construing section 402 (d). Section 402 (e) insofar as is here pertinent, reads as follows:

SEC. 402. (e) (4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

While we are of the opinion that the rule applicable to cost of production is not applicable to section 402 (d), we would observe that, even under that rule, the profit made by the dye industry generally would not afford a proper basis for the deduction of 8 per centum for profits in the case at bar. In the case of *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378, we had occasion to construe the provisions of subdivision 4 of section 402 (e), above quoted. One of the questions involved was whether the ordinary profits of velvet manufacturers might be considered in determining what sum should be allowed for profit upon velvets "in the gray." We there held that finished velvets were not of the same general character as "velvets in the gray," and therefore the profits of manufacturers upon velvets in their finished state could not be considered.

So in the case. at bar, we cannot hold that the dye in question is of the same general character as natural dyes.

We hold that the appellate division erred in holding that the usual or ordinary profit of the dye industry furnished a proper basis for the

allowance of profit in determining the United States value of the merchandise here involved. We further hold that the statute contemplates an allowance for profit only upon "such or similar imported merchandise," and that such profit must be established by evidence.

This brings us to the consideration of the fourth method hereinbefore set out, which is the same as the third method except upon the question of profit. We are of the opinion that the correct method is that the profit here to be allowed should be determined by the ordinary profit made by the trade on such merchandise as is here involved, or upon merchandise similar thereto. This is a matter of proof, and in the absence of proof of such profit, no allowance for profit should be made in determining United States value.

The Government insists that the proof in the record shows that the ordinary profit upon such or similar merchandise was 55 one-hundredths of 1 per centum. It appears from the record that the witness Wolf, who was the appraiser of the merchandise in question, testified that the average profit on such merchandise as is here involved was, at the time of exportation of the instant merchandise, less than 8 per centum, but that he was unable at that moment to give any figure of what the profit actually was. It was agreed between counsel that the witness should make a calculation as to what he considered such average profit was, and that such calculation should be in writing and be made a part of the record. This was done and certain calculations were put into the record, with a statement of the witness that said calculations "show an average profit of 0.55 per centum on this merchandise from January to April 1926." There is in the record no other evidence of profit upon "such or similar imported merchandise."

We do not find it necessary to pass upon the question of whether there is evidence in the record establishing any profit upon "such or similar imported merchandise" upon which to base an allowance in determining United States value of the merchandise here involved. This court has no jurisdiction to make an appraisement and we may pass upon questions of law only that are issues in the case.

We find it necessary here to decide only that an allowance for profit under section 402 (d) may not be made upon the basis of the usual profit of an industry as a whole, but must be based upon the usual profit made in dealing in the dyes here involved, or in dyes similar thereto.

To recapitulate, our construction of section 402 (d), so far as the question here involved is concerned, is that the basis of an allowance for profit must be the usual profit upon "such or similar imported merchandise." Whether the importer of the merchandise involved has or has not a prospective profit, based upon the cost of his merchandise, is immaterial, and it is likewise immaterial what the usual

profit of an industry as a whole may be, unless such industry deals only in such merchandise as that in question, or merchandise similar thereto.

For the reasons stated, the judgment appealed from is *reversed* and the cause is *remanded* for further proceedings consistent with the views herein expressed.